Hover, J.
It appears that the industrial commission of Ohio, by action of one of its departments', condemned the school house of the De Graff village school district; and that there was not in the treasury of the board of education of that district sufficient funds to make the repairs required. Whereupon, the board of education, by its resolution, and in the exercise of its discretion, decided to buy a new site and to erect a new school house. ■ By virtue of such resolution an amount of tax exceeding the authorized levy would be necessary, and the board decided to issue bonds in the sum of one hundred and twenty thousand dollars for the new school building, and bonds in the sum of five thousand' dollars with which to purchase a new site. This proposition.went' before the voters of the district on the 8th day of July, 1919. Both propositions — that for $120,000) for a new school building, and that for $5,000 for a new site — carried.
The' plaintiff brings his action against the board of education to enjoin it from further proceeding under the resolution and vote of the electors held, whereunder said board is about to issue and sell the bonds in the amounts as above described, buy a new site, and erect and equip a new school building, and asks that the board be enjoined from so doing, and that the auditor and the treasurer of Logan county be enjoined from plaeing'upon .the duplicate and from collecting the taxes or any tax thereby levied upon the property of plaintiff or those he represents, for the purpose of collecting, in addition to all other taxes, an amount sufficient' to pay the interest on said bonds and to provide a sinking fund for their final redemption at maturity.
Plaintiff claims:
1. ..That his lands and the lands of these he represents have •not-been legally transferred-from the rural school district to -the Ue'Graff''village school district. ■ '•••.-
That: the board of-'education was without jurisdiction or authority to order an emergency levy for $120,000 of bonds.
*243 - 3. ■ That there is no necessity for the erection of a new school building to provide for the needs and requirements-bf- the pupils bf the De Graff village school district. • ■ .
As to the first ground set up — that is, that the lands of plaintiff and those he represents havb not- been legally "transferred from the rural school district; the evidence show's that about three years ago there was a transfer of lands, including those of plaintiff, from Pleasant, Union" and Miami townships, not before included in the- De -Graff village' school district, --to said village school district. The evidence- shows that the plaintiff has since abided by the decision without complaint until now; that he has paid the taxes levied ¿gainst -his -lands in the village school district,- -for about three years, without protest ;- that he has participated in the elections of the village school .district, and--by his acts and conduct has acquisced in the- transfer - of property for such length of time that the court believes plaintiff is estopped •from raising the question of the legality of the transfer at this late day.
The points argued as constituting the illegality of the transfer are, that notice was not published in a newspaper, and that funds were not apportioned between the districts according to the requirements of statute, and these are the only points touching the illegality of the transfer brought to the attention of the court. The court is satisfied from the evidence that publication was had and apportionment made of funds between the districts.
On the third point — that is, that the new building and the new site are not needed — this question is directed to the discretionary powers of the board.
The evidence shows that under an order issued by the industrial commission of Ohio, to put the present buildings in condition and-equip them as required, would have cost the district something like eighty-five thousand to ninety thousand dollars; and with these repairs; the buildings would not be as up-to-date, 'nbias' good and durable, as new buildings."
*244 The court believes that it was within the discretion of the ■board of education to determine which should be done — that is, to repair or to build new; and by proper resolution the board of education determined to buy a new site and to erect new buildings and equip them according to law and the requirement of the industrial commission. The court is without authority to disturb the discretion lodged in the board of education. If there was abuse, in a gross form, of discretion a court of equity might intervene, but in this case there doesn’t seem to be any abuse of discretion, and on that point there is no ground for injunction as prayed for against the board of education.
The second ground — that is, that the board- is without jurisdiction or authority to order an emergency levy — presents a much more serious question.
Stating the proposition generally, without citing the sections of the statute in support, taxing boards are limited under the Smith one per cent, law to ten mills, other -than an additional levy to take care of prior existing indebtedness, interest and bonds outstanding. Then, ■ to exceed that amount of levy, it requires certain conditions to exist, and the exercise of certain authority to create what is known as an “ emergency, ’ ’ whereby, upon a vote of the people of the taxing district, a greater levy may be made and collected from property holders and taxpayers of the taxing district.
It has been noted that the industrial commission, by its agents, prohibited the use of the school building and certain equipment of the De Graff village school district, some time during the spring or early summer of 1919.
The statute relied upon by the board is 7630-1, the first part of the section being as follows:
“If a school house is wholly or partly destroyed by fire or other casualty, or if the use of any school house for its intended purpose is prohibited by an order of the chief inspector of workshops and factories, and the board of education of the school district is without sufficient funds applicable to the purpose, with which to build or repair such school house or to construct *245 a new school house for the proper accommodation of the school district, and it is not practicable to secure such funds under any of the six preceding sections because of the limits of taxation * * * on the approval of the electors in the manner provicled * * * the board of education * * * may issue bonds for the amount required for such purpose.”
This is known as the “emergency statute,” for school building purposes, for exceeding prescribed limits in the amount of levy that can otherwise be made.
This section provides:
“If destroyed by fire or other casualty, or if the use of any school house, for its intended purpose, is prohibited by any order of the chief inspector of workshops and factories.”
In other words, before the board of education is authorized to issue bonds in excess of the usual limit, one of these conditions must exist — either fire, other casualty, or its use prohibited by order of the chief inspector of workshops and factories.
The chief inspector can not order an election. That depends upon a resolution of the board of education. The board of education, by its own action, can not prohibit the use of a building for the purpose of an emergency levy. A joint action of the chief inspector of workshops and factories and the board of education is necessary to comply with the statute in creating an emergency justifying an excess levy.
It is contended by plaintiff that Section 7630-1 (which is the only section authorizing such an emergency levy) is repealed by implication, and that the resolution of the board of education is without authority in this case for the emergency levy proposed.
The date of the passage of the section just referred to, 763Q-1, was April 18, 1913. O. L. 103, page 527. The same Legislature, on the 12th day of March, 1913, abolished the department of chief inspector of workshops and factories. (O. L. 103, page 103, Section 871-11.) The act was no doubt in full force and effect until the 1st day of September, 1913, when by *246 tlie former act the department of workshops and factories was abolished to take effect on that day.
Section 871-11 provides:
! ‘ On and after the first day of September, 1913, the following departments of the state of Ohio, to-wit: commissioner of labor statistics, chief inspector of mines, chief inspector of workshops and factories, chief examiner of steam engineers, board of bóiler rules, and the state board of arbitration and conciliation, shall have no further legal existence, .except that the heads of the said departments, and said ¡boards, shall within ten days after the said date submit to the Governor their reports of their respective departments for the portion of the year 1913 during which they were in exsitence, and on and after the first day of September, 1913, the industrial commission of Ohio shall have all the powers and enter' upon 'the performance' of 'all the duties conferred by law upon the said departments. ’ ’
The title of this act is: “.An. act-creating the industrial commission of Ohio, superseding the state liability board of awards, abolishing the departments of commissioner of labor .'.statistics, chief inspector of mines, chief, inspector of workshops and ¡factories,” and continuing with a large number of other bureaus and departments, which, by this act, were abolished, and the industrial commission of Ohio created. ■
This act attempts to impose upon the industrial commission of Ohio all the duties, liabilities, authority,. powers and privileges conferred and imposed by law upon these various boards, commissions, bureaus, ■ etc., including the chief inspector of workshops and factories, on and after the first day of September, 1913, by reference only.
. It was evidently the intention of the Legislature to substitute, throughout all the statutes of the Code, the words, ..“the Ohio industrial commission,” for “the commissioner of labor statistics,” “-chief inspector of mines,” “chief inspector of workshops and factories,” “chief examiner of steam engineers,” “board of arbitration and conciliation,” and others. That is, that wherever the name of any one of these bureaus or. departments or commissions stands in the statute, it is to be lifted *247 out, and the words, .“the industrial commission. of,Ohio’’ read into the statutes. . .
Section 871-24 (O. L. 103, p. 103.) provides:
“All duties, liabilities, authority, powers and privileges conferred and imposed by law upon * * * the chief inspector of workshops and factories * * * are hereby imposed upon the industrial commission of Ohio and its deputies on and after the first" day of September, 1913.”
Section 7630-1, which authorizes the emergency levy under the conditions therein provided, was not specifically repealed by the enactment abolishing the department of chief inspector of workshops and factories. In fact it was enacted after the act abolishing the department of the chief inspector of workshops and factories had been passed but before it, Section 871-11, G. C., was to take effect, that is on the first day of September, 1913. It would have been an easy matter for the Legislature to have incorporated into this section that from and after September 1, Í9.13,.the duties therein imposed upon the chief inspector of workshops and factories should devolve upon the industrial commission of Ohio. Then there could have been no question about the repealing of this statute.
, Section 871-11 abolished the department of chief inspector of workshops and factories. And then after the first day of September — the act, however, providing ten days’ additional time for the officers to make their reports and wind up the business of their departments — the industrial commission of Ohio was to come into being.
The question arises: Was the board of education of the De Graff village school district authorized to exceed the usual levy by an order coming from the industrial commission of Ohio, assuming that such an order was legally issued? If said commission made, such an order and promulgated it to the board, did that authorize the board of education to call an election and to place upon the duplicate the excess levy under the emergency clause?
*248 In . other words — has this court the right to take out of Section 7630-1, G-. C., the words, “the chief inspector of workshops and factories” and to write therein the words, “the industrial commission of Ohio”?
Article 2, Section 16 of the Constitution of Ohio, provides:
“No bill shall contain more than one subject, which shall be clearly expressed in the title, and no law shall be revived, or amended, unless the new act contains the entire act revived, or section or sections amended, and the section or sections so amended shall be repealed. ” '
When the Legislature abolished the department of chief inspector of workshops and factories, it affected this emergency school levy, Stection 7630-1, for the reason that it took away the power that made the emergency levy possible.
The Legislature attempted to substitute a new board, by reference, but Section 7630-1 was not expressly repealed nor expressly amended. Then what rule shall apply? And how are the courts to be governed under a situation of this character? Eepeals by implication are not favored. Lehman v. McBride, 15 O. S., page 573.
Before citing this authority the court should say that this particular provision of the Constitution above quoted, Article 2, Sec. 16, was not changed by the amendments that were enacted September 3, 1912.
Quoting from the opinion on page 603:
“The constitutional provision, to which it is said this act does not conform, was intended mainly to prevent improvident legislation, and with that view, as well as for the purpose of making all acts when amended, intelligible, without an examination of the statute as it stood prior to the amendment, it requires every section which is intended to supersede a former one, to be fully set out. No amendments are to be made by directing specific words or clauses to be stricken from or inserted in a section of a prior statute, which may be referred to, but the new act must contain the section as amended.”
*249 The Lehman ease just referred to was decided in 1863. The Supreme Court pronounced the same rule in the- case of State ex rel v. O’Brien, 96 O. S., 166. For a period of time from 1913 to 1915, personal property assessors were appointed, and on the 7th day of May,. 1915, 106 O. L., 246, the General Assembly passed an act requiring assessors to be elected, and imposed duties by reference to the repealed law.
' The sixth syllabus of that case is as follows:
' '“'The provision of Section 16 of Article 2 of the Constitution of Ohio, providing that no law. shall be revived or ’ amended unless the new act contains the entire act revived or the section or sections' amended, is mandatory. The inclusion, by reference, of the provisions of a repealed statute, is in violation- of this provision of the Constitution of Ohio, and void. ’ ’
The seventh paragraph of the syllabus is:
“The statute, defining the duties, powers, liabilities and penalties imposed upon deputy assessors, being repealed, the provision of Section 17 of the act of the General Assembly of Ohio, passed May 7, 1915, 106 O. L., 246, that the elected assessor ‘shall perform all the duties, exercise all powers and be subject to all the liabilities and penalties devolved, conferred or imposed by law upon the deputy assessor so appointed, ’ are unconstitutional and void.”
When the Legislature abolished the department of the chief inspector of workshops and factories, it repealed Section 7630-1 by implication, for there was no authority left in that statute that would give it vitality. The Legislature might have reenacted and revived the section, vitalizing the emergency act for an excess of levy over and above the prescribed amount, but the Legislature has not done so.
In the opinion, in the O’Brien case, page 177, supra, the court say:
“The repeal of the statute is the end of that statute. To all intents and purposes it is the same as if it had never existed. Reference in a legislative act to a repealed law, as supplementary *250 or ¡explanatory, of the act, is an absurdity, prohibited by..this provisions of the Constitution.” “Any other course would lead to endless confusion and uncertainty and prevent an intelligent administration of the' statutory law of this state. .The ' facf that a statute is recently repealed or' repealed by the same act it refers to, is no argument in favor of. such loose legislation. If that can be done,, then reference can, be made, to a statute repealed half a century ago, or the new section may. remain, unrepealed for the next half' century. In either case, it would require that all the repealed statutés'be carried into each edition of the General Code published; otherwise, there would-be no. means availáble to determine the scope, intent, and purpose of the act,' wh'iéíi incorporates, by' referéhc'e,' á párt of the provisions of' the repealed law^ ' This,' of ' course,’ would be wholly impracticable, if not impossible.” ■
The court has stated the well known rule that repeals by implication are never favored. . . , , , ,
In Goff v. Gates, 87 O. S., page 142, the first paragraph of the syllabus ’reads:
."“An act of the Legislature that fails' to repeal, in terms, an ¿xisting statute oii the same subject matter, must 'be held to repeal the ‘former ’statute by implication, if .the latter act Vis' in direct conflict with’ the former, or if' the subséquent act' revises the whole subject matter of the former act and is evidently intended as a substitute for it.”
■ The act establishing, the industrial commission of Ohio abolished the,department of chief inspector of workshops and..factories. It .thereby repealed by implication Section 7.630:1, for this section is without foyce or vitality, with the, department of chief inspector of -workshops, and factories, abolished., Therefore that section was repealed by implication, as it became inoperative from and after September 1, 1913. ,
Donahue, judge, in the ease of Rabe v. Board of Education, 88 O. S., page 40)3, lays down the law very plainly on the question of levying taxes and issuing bonds by boards of education. Quoting from the opinion on page' '406:
*251 • ‘ ‘ The authority of this board of education to issue these bonds must be determined solely with reference to the law as. it then-existed and without reference to what the law had been in the past or might be in the future. ’ ’
Some of the sections that are included in the opinion do not apply, but the principle the court is announcing does apply, and the court desires to quote, omitting sections in most instances that the court uses, and applying the question ,to. the sections that govern the case now under consideration, but not giving their numbers. ■ ■ ' ' ....
■ “ These • sections limit the rate of taxes -that may be levied within any taxing district for all purposes, to ten mills on the dollar of the tax valuation of the taxable property of any county, township, city, village, school district or other taxing district for that year, and such levies in addition thereto for sinking fund- and interest purposes as may be necessary to provide for any indebtedness heretofore incurred or any indebtedness that may hereafter be incurred by -a vote of the people. ’ ’
“The, Legislature, when it passed these sections of. the General Code, limiting the rate of taxes that may be levied in. any one’ taxing district, did not specifically repeal” (and here the court will supply, 7630-1) “but the effect of this latter legislation upon these former statutes can not be doubted.”
“It is the duty of the court to harmonize and reconcile 'laws where possible. It is also the settled law of this state that, an act of the Legislature that fails to repeal, in terms, existing statutes on the same subject matter must be held to repeal the same by implication, if the latter law Is in direct conflict therewith.”
' In that case it was suggested, in a brief of counsel, that a certain section was not necessarily repealed, but that on the contrary the provisions of the later legislation, limiting the rate of tax that might be levied in any taxing district, should be read into a certain section instead of the specific sections named, and quoting from the opinion—
“In answer to this it is only necessary to suggest that a law can not be amended in this way.” '
*252 If Section 7630-1 is repealed by implication, which the court finds it to be in so far as it applies to or affects the ‘ ‘ Chief Inspector of Workshops and Factories” or the “Industrial Commission of Ohio,” then there is no statute authorizing such an emergency levy by reason of an order of the industrial eommis-' sion of Ohio.
Section 16, Article 2 of the Constitution of Ohio, provides:
“No law shall be revived or amended unless the act contains the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed.”
. Examination was made of the situation when the board of infirmary directors was abolished. But the act abolishing that board made no attempt to impose duties by reference. The board was abolished and the duties of the county commissioners therein defined. Section 2522, G. C., and following, 102. O. L., 433.
It therefore follows that Section 7630-1 being repealed by implication by the passage of 871-11 and 24, it could not be revived, re-enacted, or amended by any method in direct conflict with the positive prohibition of the Constitution; and because of the fact that the Legislature has never seen fit to take out of the statute the words, “the chief inspector of workshops and factories,” and to write into it, “the industrial commission of Ohio,” Section 7630-1 has not been the law since September 1,1913, and is not now the law of Ohio.
The court finds further that the record certified from the industrial commission is of itself insufficient to warrant the plaintiff in the action taken, as that commission was named in Section 7630-1, G. C., for the reason that the record fails to comply with Section 871-9, wherein it is provided that—
“The commission shall be in continuous session and open for the transaction of business during all business hours of each and every day, excepting Sundays and legal holidays. The sessions shall be open to the public and the sessions of the commission shall stand and be adjourned without further notice thereof on its record. All of the proceedings of the commission shall *253 be shown on its record, which shall be a public record,' and all voting shall be had by calling each member’s name by the secretary, and each member’s vote shall be recorded on the proceedings as cast.”
The certificates filed do not show that the members’ votes were recorded on any stated proceedings. There is no record that the matter of the De Graff village school district or the matter of the board of education of the De Graff village school district was even submitted to the commission and voted upon by the members thereof. The certified copies of the record simply say, under the three separate dates of April 24, 1919, July 31, 1919, and August 11, 1919, the commission approved the orders issued by the department of inspection, division of W. F. and P. B., followed by the vote. What orders were approved? Did the commission vote on the De Graff school house question? If the members did vote, there is no record shown by the certified copy. The certificate shows that the commission voted to approve orders of an inspector issued on a date; voted approval of orders, in the plural, on certain dates. Did the board vote on all the orders issued for a day, without reference to them separately? The only possible connection shown here is by dates, no substance, merely dates. ‘ ‘ The members ’ votes shall be recorded in the proceedings.” “The proceedings” are not even named in the record.
Section 871-5, G. C., part of the same act, further provides:
“Every order made by a member thereof, or by one of its duly authorized deputies, when approved and confirmed by a majority of the members and so shown on its record of proceedings shall be decreed to be the order of said commission.”
But there are no “proceedings” shown by the certificates filed, nor is it shown that any “proceedings” were had with reference to the De Graff school building.
The Industrial Commission, when it attempts to exercise special jurisdiction in so important a matter as an emergency levy of taxation, must act in the manner pointed out in the statute. *254 Bloom v. Xenia, 32 O. S., 466; Campbell v. Campbell, 49 O. S., 463.
A separate vote and a separate record on each “proceeding” should be had and recorded.
Were there no other question in this case than the sufficiency of the record, the court would be warranted in holding that the board should be enjoined, for the reason that there had been no finding by the industrial commission authorizing the defendant board to proceed to make the emergency levy.
; The further finding is that that part of Section 871-11, G. C., providing for the transfer of powers and duties from the chief inspector of workshops and factories tp the- industrial commission, by reference, is unconstitutional and void; thpt .Section 871-24, G. C., wherein and so far as said section or part of said section attempts to transfer from the chief inspec,tor of workshops and factories and to impose the duties, liabilities, authority, powers and privileges thereof upon the industrial commission by reference, is unconstitutional and .void; that Section 7630-1, G. 0., was from and after September 1, 1913, repealed by implication; that the same has not been revived or re-enacted, and is not now the law.
The court is aware of the significance of this finding and it is not without much anxiety that this decision is pronounced. The people of the district have voted- for and are willing to pay the excess rate of taxation to procure such school accommodations as the majority desire, aud it is regretted that the laws are not sufficient to permit the accomplishment of the public will.
In view of the recent findings of the Supreme Court on the question before the court now — that is, that Sec. 7630-1 is re- , pealed by implication, and has not-been revived — and .the court being without power to revive it, that duty belonging to- the Legislature, the finding of the court is that the temporary ;re- - straining order be made permanent, v ' .Defendant to pay the costs. .